**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| B.H., by and through his parents, RYAN AND STEPHANIE HAWKS,<br><br>Plaintiff,<br><br>v.<br><br>LANSING UNIFIED SCHOOL DISTRICT 469,<br><br>Defendant. | Case No. |

## COMPLAINT

Plaintiff B.H., by and through his parents, guardians, and next friends, Ryan Hawks and Stephanie Hawks ("Plaintiff"), brings this action against Lansing Unified School District of Kansas #469 ("the District") for failure to accommodate B.H.'s disability in violation of the Americans with Disabilities Act and the Rehabilitation Act.[1]

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred on this Court pursuant to 28 USC § 1331, as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("the ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. ("the Rehabilitation Act").

2. The District is subject to personal jurisdiction in this Court because it is a public school district organized and existing under the laws of the State of Kansas, and all events described in this Complaint occurred in the State of Kansas.

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a)(3) and the District of Kansas's Administrative Procedures, Plaintiff refers to the minor by his initials. *See* Fed. R. Civ. P. 5.2(a)(3).

3. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because all parties reside in Kansas, and all events described in this Complaint occurred in the State of Kansas, within the boundaries of the District of Kansas.

## THE PARTIES

4. B.H. is a minor who is domiciled in the State of Kansas. At the time of each violation herein, B.H. was a qualified individual with a disability within the meaning of the ADA and the Rehabilitation Act.

5. Ryan and Stephanie Hawks are the parents of B.H. They are domiciled in the State of Kansas.

6. The District is primarily located within Lansing, Kansas and is a public school district organized and existing under the laws of the State of Kansas. At all times relevant herein, the District was the educational agency responsible for providing B.H. with full and equal access to the public education programs and activities it offers in compliance with the requirements of federal law. The District receives federal funding.

## INTRODUCTION

7. This case concerns the District's decision to prohibit the provision of mental and behavioral healthcare at school to treat B.H.'s medically diagnosed autism spectrum disorder. Plaintiff B.H.'s therapists, pediatricians, and parents all agree that B.H.'s autism could and should be addressed through the provision of Applied Behavior Analysis ("ABA") therapy at school.

8. This therapy would be provided by B.H.'s private therapists at no cost to the District. It would not disrupt the education of B.H., nor any of his classmates. The District nevertheless prohibits it.

9. The District's decision to prohibit the provision of medically necessary mental and behavioral healthcare has risked B.H.'s health, safety, and wellbeing. It has prevented B.H. from

accessing educational services; it has injured B.H., and his parents, and if it continues, it will cause B.H. permanent harm.

10. Because the District has prohibited the provision of mental and behavioral healthcare by B.H.'s private therapists, B.H. has been forced to attend school without this reasonable accommodation to his detriment.

## FACTUAL BACKGROUND

11. B.H. has been diagnosed with autism spectrum disorder ("autism"). B.H. is a bright, friendly, loving child who loves people.

12. As a result of his autism, B.H. experiences a host of challenges. B.H. processes sensory input differently. B.H. has experienced developmental delays, and has difficulty expressing himself verbally, understanding spoken language, regulating his emotions, interacting with his peers, and focusing on tasks. B.H. has certain potentially detrimental behaviors, such as elopement, a tendency to stray, or phobias.

13. B.H. has been prescribed Applied Behavior Analysis ("ABA") therapy as a medically necessary treatment for his autism.

14. ABA therapy is the gold standard for autism treatment. It has been studied for decades and has been associated with gains in language and communication, improved attention, focus, and social skills, and decreases in the incidence and severity of maladaptive behaviors. B.H.'s therapies are administered pursuant to a treatment plan designed and implemented by a Board Certified Behavior Analyst ("BCBA") or Autism Specialist, who reports to a BCBA. The treatment plan does not merely describe strategies to manage B.H.'s maladaptive behaviors, it establishes as goals well-defined and measurable growth in B.H.'s development and abilities, such as his capacity to cope with stress and anxiety and manage his emotions, and his ability to process language, communicate with others, interact with peers, and focus on tasks. The treatment plan is

implemented by therapists who have received specialized training in ABA therapy and who work one-on-one with B.H. under the supervision of the BCBA or Autism Specialist. ABA therapists use specialized data collection methods to track progress toward developmental and behavioral goals which are defined in a treatment plan.

15. It is medically necessary for B.H. to receive ABA therapy in multiple settings, including at home, at school, and in the community, so that ABA therapy can be used to address his developmental and behavioral deficits across multiple settings. It is medically necessary for B.H. to receive ABA therapy in multiple settings so that the gains he makes through therapy can be generalized, and to ensure that these gains are permanent.

16. ABA therapy has been very helpful for B.H. The District had allowed ABA therapy in school prior to telling B.H.'s parents that ABA would no longer be allowed. Through ABA therapy, B.H. has realized significant developmental gains, including improvements in his ability to communicate, focus, and engage with other people, including his peers, with a resulting marked improvement in his social skills.

17. B.H. is an inquisitive, bright, happy child. He enjoys being outside, creating elaborate worlds of pretend play, and learning about his interests in depth. He has an incredible memory and imagination, is attentive to the emotions of those around him, and cares deeply about his family and a handful of teachers and therapists.

18. B.H. initially began receiving ABA therapy in August 2022. He has been with his current therapy team, receiving 30 hours per week, since December 2023.

19. During the 2025/2026 school year, B.H. attended First Grade at Lansing Elementary in the District. During April and May 2026, B.H. received ABA therapy—delivered by a BCBA—both in the general education setting and in the special education classroom. He also

received ABA therapy during recess and lunch, where he needed special attention. ABA therapy did not interfere with any of these learning activities, and, instead, the teachers and school therapists reported finding it helpful for B.H. and those around him to have the ABA therapist present, both to assist B.H. directly but also to model learning methods that allow him to be most successful even when the ABA therapist was not present.

20. However, in the late summer of 2026, right before the new school year began, the District stated it would be prohibiting ABA therapy in the school setting after previously allowing it.

21. Further, upon information and belief, some schools within the District had allowed ABA therapy for several years before the District reversed course and prohibited ABA therapy.

22. Due to this decision by the District, B.H. was denied the benefit of attending public school due to his disability.

23. B.H.. needs to receive ABA therapy at school as a medical treatment for his autism. Without ABA therapy at school, B.H.'s autism symptoms will likely continue to worsen and lead to more permanent impairment. He cannot receive medically necessary treatment for his autism as prescribed by his doctors without receiving ABA therapy at school.

24. Plaintiff has informed the District that B.H.. needs to receive ABA therapy at school. B.H.'s ABA therapists have observed B.H. at school and recommended that he receives ABA therapy at school. B.H.'s classroom staff, including teachers and teaching assistants, previously believed that B.H. needs to receive therapy at school and were ready and willing to accommodate this therapy. They determined that the provision of this therapy will not be disruptive to the classroom or learning objectives of other children and will not fundamentally alter the school setting.

25. The District has refused to permit the provision of ABA therapy to B.H. at school without just cause or excuse and merely offered a series of changing, pretextual reasons, despite the fact that ABA therapy had been previously allowed in the District without material incident.

26. B.H.'s therapists are ready and willing to provide ABA therapy at school in the District in a manner intended to avoid or minimize disruption to the classroom and avoid any other burden or inconvenience to the District. Based on the prior history of allowing ABA therapy, the District knows that the provision of ABA therapy to B.H. at school will not cause undue disruption in the classroom and will not fundamentally alter the school setting.

27. The District is aware that the ABA therapy requested by Plaintiff in school will come at no cost to the District.

28. B.H. requires ABA therapy to address his mental, behavioral, and developmental needs and to achieve full and equal access to the public education programs and activities that the District offers. B.H. does not require ABA therapy to address his educational needs as his teachers would provide instructional services to B.H.

**COUNT I**
**(Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.)**

29. B.H incorporates each and every allegation above as if fully set forth herein.

30. B.H. is a qualified individual with a disability under the ADA because his autism is a physical or mental impairment that substantially limits one or more major life activities.

31. The District receives federal funding.

32. B.H. requires ABA therapy at school as a medical treatment for his autism in order to ameliorate the symptoms of his autism and avoid harm to his mental health and development. Because the District has denied B.H. from receiving ABA therapy at school, his untreated autism prevents him from enjoying meaningful access to the benefits of a public education, and the

deprivation of medically necessary services causes him real and lasting physical and mental harm. The District has refused to permit B.H. to receive ABA therapy at school even though this modification is necessary to avoid discrimination against B.H. on the basis of his autism, and even though modification of this policy would not fundamentally alter any District program or service system.

33. The District has violated the ADA by failing and refusing to make reasonable accommodations necessary for B.H. to access the District's programs and services.

34. The District has violated the ADA by excluding and/or not affording him equal opportunity to participate in or benefit from its programs and services in equal measure to the participation in or benefit afforded to others.

35. The District has violated the ADA by declining to afford Plaintiff equal opportunity to participate, due to his disability, in the District's benefits and services that are afforded to others.

36. The District was on notice and was fully aware of B.H.'s need for ABA services at school but refused to permit the provision of those services.

37. B.H.'s ABA therapists were available at all relevant times to provide therapy at school as a reasonable accommodation of B.H.'s autism. The District knew that ABA treatment for B.H. at school could be provided at no cost to the District and would not be disruptive or fundamentally alter the school setting.

38. As a result of the District's refusal to accommodate B.H.'s need for ABA therapy at school, B.H. has been harmed and continues to be harmed on the basis of his disability.

39. The District has intentionally discriminated against B.H. on the basis of his disability by acting with deliberate indifference to B.H.'s need for ABA therapy at school.

40. At all relevant times, the District knew that denying B.H. this reasonable accommodation meant that by reason of his autism he is denied the benefit of programs and services offered to others.

41. B.H.'s parents repeatedly requested that B.H. be permitted to receive ABA therapy at school, and District personnel have been fully aware of B.H.'s need for accommodation and the mental, psychological, emotional, and developmental damage that has resulted from their refusal to provide this accommodation, as well as financial costs and damages incurred which would otherwise not be incurred were Plaintiff afforded the reasonable accommodation of ABA therapy provided in public school.

42. The District has been deliberately indifferent to B.H.'s unmet needs and to the harm their refusal to accommodate his needs has caused.

43. B.H. suffers ongoing and irreparable harm as a result of the District's continued discrimination and violations of the ADA and this harm will continue until the District's conduct is declared unlawful and enjoined by this Court. There is no adequate remedy at law.

**COUNT II**
**(Violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq.)**

44. B.H. incorporates each and every allegation above as if fully set forth herein.

45. B.H. is a qualified individual with a disability under Section 504 of the Rehabilitation Act in that his autism is a physical or mental impairment that substantially limits one or more major life activities.

46. The District receives federal funding.

47. The District has violated the Rehabilitation Act by failing and refusing to make reasonable accommodations for B.H. to access the District's programs and services, by utilizing criteria and methods of administration that subject B.H. to discrimination on the basis of his

disability, by not affording B.H. an equal opportunity to participate in the District's benefits and services as those afforded others, by not making reasonable accommodations, and denying meaningful access to a public benefit.

48. The District has been and continues to be deliberately indifferent to B.H.'s need for ABA therapy at school. Denying him this accommodation means that B.H. has been denied the benefit of programs and services offered to others by reason of his autism. This denial of access to critical programs and services has resulted in mental, psychological, emotional, and developmental damage to B.H., as well as financial costs and damages incurred which would otherwise not be incurred were ABA therapy provided in public school.

49. Consequently, B.H. is suffering ongoing and irreparable harm by the District's violations of the Rehabilitation Act, and the harm will continue unless and until the District's conduct is declared unlawful and is enjoined by this Court. There is no adequate remedy at law.

## COUNT III
## (Preliminary and Permanent Injunctive Relief)

50. B.H. incorporates each and every allegation above as if fully set forth herein.

51. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes, that by refusing to accommodate B.H.'s request that his ABA trained therapist be permitted to administer medically necessary treatment during school, the District fails to comply with Title II of the ADA and Section 504 of the Rehabilitation Act.

52. The District has, and continues, to discriminate against B.H. by denying him access to the full and equal opportunity to participate in the District's benefits and services as those afforded others in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. B.H. is actively experiencing harm by being denied the benefit of public education on the basis of his disability.

53. Pursuant to 42 U.S.C. § 12188, this Court is provided with the authority to grant injunctive relief, including an Order requiring the District to permit B.H.'s ABA trained therapists to administer medically necessary treatment during school throughout the pendency of this litigation to protect the rights of B.H. and to prevent additional irreparable harm to B.H.

54. B.H. is likely to prevail on the merits of his claims because the District's refusal to allow his ABA trained therapists to administer medically necessary treatment during school amounts to clear violations of Title II of the ADA and Section 504 of the Rehabilitation Act. The District failed to engage in an interactive process with B.H. in response to his requests for reasonable accommodations, and instead simply denied his requests.

55. B.H. has suffered and will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries if the District is not ordered to provide him with meaningful access to the school by allowing his ABA trained therapists to administer medically necessary treatment during the school day.

56. The balance of equities tip in favor of granting injunctive relief because B.H.'s physicians have prescribed ABA Therapy as a medical necessity, his ABA trained therapists are available to administer his medically necessary treatment during school at no cost to the district, and without this injunction, B.H. will continue to suffer irreparable mental, physical, emotional, psychological, and developmental injuries.

57. Granting this injunction will cause little, if any, harm to the District because this treatment is funded by B.H.'s private insurance, and it will not fundamentally alter or disrupt the school setting. It would merely put B.H. back in the position that he was in in during the 2025/2026 academic year when the District allowed ABA therapy in the classroom and in special education sessions.

58. Time is of the essence as B.H. is in the critical years of his life and educational journey, and any delay in getting him back into public school with his medically prescribed ABA therapy will cause irreparable harm.

59. Granting this injunction is in the public interest to prohibit violations of the law and to fulfill the important goals of the ADA and the Rehabilitation Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in his favor against the District, granting the following relief:

A. A preliminary and permanent injunction requiring the District to permit B.H. to receive ABA therapy at school;

B. Set an emergency hearing for the preliminary injunction at the earliest convenient time for the Court;

C. An award of damages to be proven at trial;

D. An award of reasonable attorneys' fees, costs, and expenses under any applicable law;

E. An award of pre-judgment and post-judgment interest at the highest lawful rates; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable by jury raised herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests that the trial of this case take place in Kansas City, Kansas.

Dated this 10th day of November 2026.

Respectfully submitted,

**STINSON LLP**

By: *s/ Thomas H. Davis*
Thomas H. Davis, KS #23635
Sarah C. Schmitz, KS #30127
1201 Walnut, Suite 2900
Kansas City, Missouri 64106
(816) 842-8600
(816) 691-3495 (fax)
thomas.davis@stinson.com
sarah.schmitz@stinson.com

***Attorneys for Plaintiff***